**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

IN RE:

RODOLFO RAMIREZ CARRERO and
KENDALL ROGGIO VEGA,

          DEBTORS.

CASE NO. 19-02460(EAG)

CHAPTER 11

FILED & ENTERED ON 8/6/2020

**OPINION AND ORDER**

Pending before the court is a request by OSP Consortium, LLC ("OSP") that the debtors be barred from refiling a bankruptcy petition for 180 days from the date of the order of dismissal, and the debtors' opposition to it. (Dkt. Nos. 190 & 198.) For the reasons stated below, the court denies OSP's request.

### I.  Jurisdiction.

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

## II. Procedural History.

On May 1, 2019, debtors Rodolfo Ramirez Carrero ("Dr. Ramirez") and Kendall Roggio Vega ("Mrs. Roggio") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Dkt. No. 1.) A hearing on the final approval of the disclosure statement and confirmation of the small business plan was held on April 29, 2020. (Dkt. No. 181.)

Prior to the hearing, the court entered an order for the debtors to show cause as to why the case should not be dismissed or converted to chapter 7 due to the debtors' failure to file timely an amended disclosure statement and plan. (Dkt. No. 168.) The debtors responded on April 28, 2020, informing the court that "they [were] not in the position" to file an amended disclosure statement and plan since their properties had been damaged in the earthquakes that affected Puerto Rico in January 2020, "making it thus impossible for the [d]ebtors to comply with the terms of the stipulation" entered with the secured creditor, OSP. (Dkt. No. 180.) At the hearing, the debtors consented to the dismissal of the case on this basis. (Dkt. No. 181.) OSP, however, requested that the court impose a 180-day bar to the debtors re-filing a bankruptcy petition. Id. The court provided a term for OSP to file a motion in support of its position and for the debtors to file their opposition. Id. An evidentiary hearing was set for June 9, 2020. Id.

At the evidentiary hearing, the court heard testimony from both debtors and from Francisco de Armas Cubas ("Mr. de Armas"), the principal of OSP's servicer, Caribbean Investment & Acquisition, Corp. (Dkt. No. 202.) At the conclusion of the hearing, the court took the matter under advisement. Id.

2

### III. Findings of Fact.

After careful consideration of the stipulated facts contained in the parties' joint pretrial report, the witnesses' testimonies, and the contents of the documents introduced as evidence, the court makes the following findings of fact and conclusions of law pursuant to Rule 52(a), made applicable to this proceeding by Bankruptcy Rules 7052 and 9014:

Prior to the filing of this bankruptcy case, the debtors entered into credit facilities with Banco Popular de Puerto Rico and Westernbank de Puerto Rico, OSP's predecessors in interest, under which six of the debtors' real properties were mortgaged. (Joint Statement of Uncontested Fact ("JSUF") at ¶ 1, Dkt. No. 199; Claims Register No. 12-1.) The parties also entered into a security agreement over the debtors' boat and an assignment agreement regarding a life insurance policy. (JSUF at ¶¶ 18-19, Dkt. No. 199; Claims Register No. 12-1.) The credit facilities were restructured in 2014, with a lump sum due on August 26, 2016. (JSUF at ¶ 22, Dkt. No. 199; Claims Register No. 12-1.) The debtors did not complete the payments, and Condado 2, LLC, OSP's predecessor in interest, brought a collection and foreclosure action in local court against the debtors. On December 6, 2017, the local court entered judgment against the debtors in the amount set forth in the credit facilities. (JSUF at ¶ 23, Dkt. No. 199; Claims Register No. 12-1.)

On May 1, 2019, the debtors filed this bankruptcy case. (JSUF at ¶ 24, Dkt. No. 199; Dkt. No. 1.) OSP filed its proof of claim on July 9, 2019, in the amount of $1,521,017.66, wholly secured. (JSUF at ¶ 25, Dkt. No. 199; Claims Register No. 12-1.) The last monthly operating report filed by the debtors corresponds to October 2019. (Dkt. No. 123.)

On July 18, 2019, OSP filed a motion to lift the automatic stay, which it subsequently amended. (JSUF at ¶ 26, Dkt. No. 199; Dkt. Nos. 39 & 105.) After substantial negotiations, the debtors and OSP entered into a stipulation as to the creditor's treatment under the plan on December 24, 2019, which the court later approved. (JSUF at ¶ 28, Dkt. No. 199; Dkt. Nos. 135 & 148.) Under the stipulation, the debtor would make monthly payments for 24 months in the amount of $8,500.00, with a lump sum payment due at the end of the 24th month in the amount of $750,000.00. (Dkt. No. 135.) On January 9, 2020, OSP filed an objection to the approval of the disclosure statement and confirmation of the plan based on the fact that they did not reflect the stipulation OSP had recently entered with the debtors. (JSUF at ¶ 30, Dkt. No. 199; Dkt. No. 141.)

On February 4, 2020, the court entered an order granting the debtors until March 20, 2020 to file an amended disclosure statement and plan and scheduled a hearing on the final approval of the disclosure statement and confirmation of the plan for April 29, 2020. (JSUF at ¶ 31, Dkt. No. 199; Dkt. No. 158.) That same day, the debtors and OSP held a telephonic conference during which the debtors informed OSP that they would not be making further payments to the creditor under the terms of the stipulation since the properties collateralizing OSP's loan had been damaged in the earthquakes that affected Puerto Rico in January 2020. (JSUF at ¶ 32, Dkt. No. 199.) OSP requested that the debtors submit evidence of the damages as well as a copy of the insurance claim in order to see if a modification of the stipulation was viable. Id. The debtors never provided this information to OSP. Id.

The debtors did not file an amended disclosure statement and plan within the deadline set by the court, so the court, on April 15, 2020, entered an order to show cause. (JSUF at ¶ 33,

Dkt. No. 199; Dkt. No. 168.)  On April 16, 2020, OSP filed a motion to lift the stay, citing the debtors' failure to make the payments agreed to under the stipulation. (JSUF at ¶ 34, Dkt. No. 199; Dkt. No. 171.)  The motion was granted without opposition on May 11, 2020.  (JSUF at ¶ 38, Dkt. No. 199; Dkt. No. 188.)

On April 28, 2020, the debtors responded to the order to show cause, stating that they were "not in a position to file a new [d]isclosure statement and [p]lan" since the properties securing OSP's claim were damaged during the earthquakes in January 2020.  (JSUF at ¶ 35, Dkt. No. 199; Dkt. No. 180.)  The debtors went on to state that conversion of the case to chapter 7 would not be practicable both because the properties were damaged and since there was no equity in the properties.  Id.

At the hearing held the following day, the debtors reiterated that they could not file an amended disclosure statement and plan due to the damages suffered by the properties, and indicated that they consented to the dismissal of the case.  (JSUF at ¶ 36, Dkt. No. 199; Dkt. No. 181.) OSP argued that the dismissal order should contain a 180-day bar to re-file, alleging that the debtors were acting in bad faith.  Id.  The debtors opposed OSP's request, so the parties were given a term to file briefs in support of their position and the matter was set for an evidentiary hearing.  Id.

At the evidentiary hearing, Mr. de Armas, the principal of OSP's servicer, testified that OSP conducted an external inspection from the road  of the debtors' properties in late January 2020, and submitted into evidence a number of photographs taken from the outside of the debtors' residence and medical office.  (OSP's Exs. 1-12.)  Mr. de Armas, while conceding that he has no training as a structural engineer, stated that to him the inspection did not appear to

5

reveal any external damage to either property. The court notes that at least two of the photographs submitted by OSP show what appears to be cracks in one of the residence's walls, although it is possible that these are water marks, as Mr. de Armas opined. (OSP's Exs. 1&2.) In any event, the debtors both testified that their residence suffered significant damage to the interior as a result of the earthquakes, and the debtors submitted numerous photographs revealing the extent of those damages, including, but not limited to, crumbling archways, separated walls, and extensive moisture and mold damage. (Debtors' Exs. I-XXI.) The court finds the debtors' testimony on this matter to be credible and finds that the debtors' residence suffered significant, interior damages as a result of the January 2020 earthquakes.

Mrs. Roggio testified that she initiated the insurance claims process as to the residence on or around January 8, 2020, the day after one of major earthquakes struck the southwest region of Puerto Rico. The process, however, is still ongoing, as the COVID-19 pandemic has made it difficult to have insurance adjustors complete their assessment of the property or for contractors to begin the repairs. This is further complicated by the fact that the residence, which was built in the early 1900s, is on the historic registry. The debtors both acknowledged that they did not provide OSP with any information regarding their insurance claim.

Dr. Ramirez, a physician specializing in obstretics and gynecology, testified that his medical practice has been severely affected by both the January 2020 earthquakes and by the COVID-19 pandemic. He stated that following the earthquakes in January 2020, his medical office was shuttered for several weeks as he waited for electricity to be restored. Upon reopening, Dr. Ramirez continued to see a reduced number of patients through February and the early part of March 2020. On March 15, 2020, the governor of Puerto Rico instituted the

first of several executive orders closing public and private businesses on the Island in response to the COVID-19 pandemic.  Dr. Ramirez testified that since this date–even as some of those restrictions have started to be lifted–he has only been able to see approximately half of his normal number of patients due to various safety procedures implemented at his office.

Dr. Ramirez testified that his income has dropped by half on account of the earthquakes and pandemic.  He contends, and the court finds credible, that the debtors made payments to OSP under the terms of the stipulation up until March 2020, but that they stopped making payments at that time due to the financial strain caused by the earthquakes and the COVID-19 pandemic.

### IV.     Legal Analysis.

At the hearing held April 29, 2020, the court found that the debtors did not show cause as to why the case should not be dismissed for failure to file an amended disclosure statement and plan.  (Dkt. No. 181.)  The debtors consented to the dismissal of the case, and no party moved the court to convert the case to chapter 7.  Id.  The only issue remaining, then, is whether the court's dismissal order should be "with prejudice to re-filing a bankruptcy petition for 180 days," as OSP advocates.  (Dkt. No. 190 at p. 7.)

As a general rule, an order dismissing a bankruptcy case is "without prejudice," meaning without affecting whether debts are dischargeable in a subsequent case.  11 U.S.C. § 349(a).  This is in order to "carry out the remedial purpose of the Bankruptcy Code and to restore property rights, insofar as is practicable, to the same positions as when the case was first filed, but without affecting the disposition of debts."  Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999) (citing In re Tomlin, 105 F.3d 933, 936-37 (4th Cir. 1997)).

7

A dismissal order also typically does not contain any injunction against future filings, commonly referred to as a bar to re-file. 11 U.S.C. § 349(a). Of note, bankruptcy courts and practitioners occasionally refer to a bar to re-file as a dismissal "with prejudice," despite the two being distinct sanctions. See, e.g., Colonial Auto Center v. Tomlin (In re Tomlin),105 F.3d 933, 938-39 (9th Cir. 1997) (collecting cases). Here, OSP clarified at the hearing that it only seeks to bar the debtors from filing another bankruptcy case for a period of time, not a determination on the dischargeability of debts.

Section 349(a) of the Bankruptcy Code states:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a).

Section 109(g), in turn, provides:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. 109(g).

The majority of courts interpreting section 349(a) have held that the "[u]nless the court, for cause, orders otherwise" language applies both to the dischargeability of debts and to the injunction against future filings portions of the statute, despite the semicolon separating

8

the two clauses. See Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 336-37, 340-41 (2d Cir. 1999). Reading sections 349(a) and 109(g) together then, a court may limit the filing of subsequent petitions in two circumstances: (1) if the court, for cause, so orders, or (2) if 109(g) applies to the debtor's case. See Jolly v. Great Western Bank (In re Jolly), 143 Bankr. 383, 387 (E.D. Va. 1992).

While "cause" is not explicitly defined under the Bankruptcy Code, Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999), courts have held that "a finding of bad faith based on egregious behavior" will satisfy this standard. In re Fleury, 294 B.R. 1, 9 (Bankr. D. Mass. 2003); see In re Ferrell, 2016 Bankr. LEXIS 246, at *7 (Bankr. D. Me. Jan. 27, 2016) ("A finding of bad faith under section 707(b)(3)(A) may be considered in determining, under section 349, whether there is a cause for the imposition of a ban on filing subsequent cases for some period of time.") That being said, a bar to re-file under section 349(a) is an "extraordinary" relief requiring a showing of "exceptional circumstances" beyond those included under section 109(g). In re Jimenez, 2019 Bankr. LEXIS 1732, at *8 (Bankr. D.P.R. June 3, 2019); see Hall v. Vance, 887 F.2d 1041, 1045 (10th Cir. 1989) ("[d]ismissal with prejudice is a severe sanction to which the courts should resort only infrequently.").

OSP argues that the debtors, in bad faith, are seeking to "bypass[] the provision of the stipulation" the parties entered in December 2019 by simply acquiescing to the dismissal of the case. (Dkt. No. 190 at p. 7.) This would allow them to then immediately re-file a second bankruptcy petition upon the dismissal of this case, thus extending the protections of the Bankruptcy Code without subjecting them to the repayment terms they previously negotiated with OSP. Id. OSP contends that the debtors' bad faith constitutes cause for the imposition of

9

a bar to re-file. Id. In support of its position, OSP cites to case law holding that "willfully failing to make a plan payment" in a chapter 13 case may be grounds for dismissal with prejudice, even for a first time filer. In re Mallory, 444 B.R. 553, 563 (S.D. Tx. 2011).

The debtors counter that their failure to make payments to OSP under the terms of the stipulation is due solely to circumstances outside of their control that have severely impacted their finances, namely the January earthquakes in Puerto Rico and the COVID-19 pandemic. (Dkt. No. 198 at pp. 2-4.) The debtors also emphasize that this is their first bankruptcy case. Id.

Given the factual record in this case, the court does not find that a bar to re-file is warranted here. At the outset, OSP is not alleging that the debtors showed bad faith in either the filing of this bankruptcy case or in the negotiations leading up to the December 2019 stipulation. Rather, OSP argues that the debtors' failure to provide it with information regarding its insurance claim following the January 2020 earthquakes and to renegotiate the stipulation constitutes bad faith. This argument downplays, however, that circumstances for the debtor have changed significantly between December 2019, when it entered the stipulation with OSP, and March 20, 2020, the deadline for the debtor to file the amended disclosure statement and plan. (Dkt. No. 158.)

The court heard credible testimony from Dr. Ramirez and Mrs. Roggio detailing the damages their residence suffered in the January 2020 earthquakes, and the difficulties they have encountered in having the damages properly assessed and repaired. While it is true that the debtors did not provide a copy of their insurance claim to OSP, it is unclear how much this would have helped the parties renegotiate a payment plan given that the damages to the

10

property, and the costs of repair, had not yet been determined even as of the date of the evidentiary hearing. Nor does that delay appear to be the debtors' fault. Mrs. Roggio testified that she initiated the insurance claims process the day after the property was damaged by one of the major earthquakes.

Dr. Ramirez also testified about the effects the earthquakes and the COVID-19 pandemic have had on his medical practice. Following the earthquakes, the debtors' business was shut down for several weeks due to a lack of electricity. Even upon reopening, the medical practice was slow to recover. And, Dr. Ramirez further testified that the COVID-19 pandemic has had a significant impact on Dr. Ramirez's medical practice beginning in March 2020, reducing by half the number of patients he has seen.

Given this virtually unprecedented series of circumstances that have directly affected the debtors' property and business, and the difficulty in trying to forecast the medical practice's future earnings in light of the ongoing pandemic, the court does not consider the debtors' determination that they would not be able to file a viable amended plan of reorganization as a sign of bad faith. The court, therefore, does not find "cause" for the imposition of a bar to re-file under section 349(a).

Section 109(g)

In its motion, OSP also addresses whether the temporal limitations of section 109(g) should apply to the debtors' case. (Dkt. No. 190 at p. 6.) While the court understands that these issues should be adjudicated only in the event that the debtors elect to file a subsequent bankruptcy case within 180 days of the dismissal of this case, the court will briefly touch on the arguments raised by OSP for the sake of completeness. 2 Collier on Bankruptcy ¶ 109.08

(Richard Levin & Henry J. Sommer, eds., 16th ed.) ("The issue of whether a bankruptcy filing is barred by section 109(g) arises only if a second petition is filed within 180 days of an earlier dismissal.")

Regarding section 109(g)(2), which bars a debtor from filing a subsequent case for 180 days if the debtor requested and obtained the voluntary dismissal of the first case following the filing of a request for relief from the automatic stay, the court finds that this section does not apply here since the debtors did not request the voluntary dismissal of this case. 11 U.S.C. 109(g)(2). The court entered, on April 15, 2020, an order for the debtors to show cause, to which the debtors responded, contending that filing an amended disclosure statement and plan was not viable due to the financial strain owing to the earthquakes. (Dkt. No. 168.) At the hearing held April 29, 2020, the court found that the debtors had failed to show cause as ordered. It is on that basis that the case is being dismissed. The court draws a distinction between "requesting the voluntary dismissal of the case," as the statute requires, and conceding that filing an amended disclosure statement and plan was no longer viable due to intervening circumstances, as happened here.

As to section 109(g)(1), this section applies where a case "was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. 109(g)(1). Although not defined by the Bankruptcy Code, courts have interpreted "willful" to mean "deliberate or intentional," rather than inadvertent or with reckless disregard. In re Shuff, 2019 Bankr. LEXIS 3770, at *4 (Bankr. S.D. W. Va. Dec. 11, 2019). Courts often "infer[] willfulness from a pattern of failure to abide by court orders." In re Martinez, 472 B.R. 137, 146 (B.A.P. 1st Cir. 2012) (internal

12

quotation omitted).

Bearing in mind that the "180-day filing ban is an extraordinary remedy for perceived abuses of the [Bankruptcy] Code," <u>Shuff</u>, 2019 Bankr. LEXIS 3770 at *4 (internal quotation omitted), the court finds that the debtors' decision not to file an amended disclosure statement and plan in light of intervening circumstances–the earthquakes and COVID-19 pandemic–does not meet the "willful failure" standard of section 109(g)(2). In so finding, the court notes that OSP does not allege, nor does the record support, that the debtors engaged in a pattern of failing to abide by court orders or otherwise abused the bankruptcy process. This is the debtors' first bankruptcy case, and the only substantive court order the debtors are accused of not complying with is the failure to file the amended disclosure statement and plan, for which, as explained in detail above, the debtors were justified.

## V.     Conclusion.

Based on the foregoing, the court thereby denies OSP's request at docket number 190 to include a 180-day bar to re-file in the dismissal order. A separate order dismissing the case will be entered.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 6th day of August, 2020.

Edward A. Godoy
U.S. Bankruptcy Judge

13